**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

MAURICE MARCELL                     :
CARTER,
                                    :
        Petitioner,
                                    :
vs.                                  CIVIL ACTION NO. 08-0380-CG-C
                                    :
UNITED STATES OF                     CRIMINAL ACTION NO. 07-0046-CG
AMERICA,                            :

        Respondent.

**<u>REPORT AND RECOMMENDATION</u>**

Petitioner, Maurice Marcell Carter, a federal prison inmate proceeding

*pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant

to 28 U.S.C. § 2255 (Doc. 168). This action has been referred to the

undersigned for entry of a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B). It is recommended that Carter's § 2255 motion be denied.

**<u>FINDINGS OF FACT</u>**

1.      On February 22, 2007, Carter was charged by indictment with

one count of conspiracy to possess with intent to distribute crack cocaine in

violation of 21 U.S.C. § 846 and seven counts of possession with intent to

distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1) By

superseding indictment, Carter, along with others, was named in a twelve (12) count indictment; Count One charged Carter with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 and Counts Two through Twelve charged him with possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 12)

2.      On April 5, 2007, Carter, through his attorney, filed notice of his intent to plead guilty to Count One of the superseding indictment charging a violation of 21 U.S.C. § 846. (Doc. 21)

3.      On April 18, 2007, the parties filed a plea agreement and factual resume with the Court. (Docs. 38 & 39) One day later, an amended plea agreement was filed in open court by the parties, same being signed by the defendant and his attorney, as well as the Assistant United States Attorney. (*See* Doc. 40) The plea agreement, as amended, reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant **MAURICE MARCELL CARTER**, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.     The defendant understands his/her rights as follows:

      a.     To be represented by an attorney;

      b.     To plead not guilty;

      c.     To have a trial by an impartial jury;

      d.     To confront and cross-examine witnesses and to call witnesses and produce other evidence in his/her defense;

      e.     To not be compelled to incriminate himself/herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.     The defendant waives rights b through e, listed above, and pleads guilty to each of Count One of the Superseding Indictment. Count One charges a violation of Title 21 United States Code, Section 846, conspiracy to possess with intent to distribute crack cocaine.

.     .     .

4.     The defendant expects the Court to rely upon his/her statements here and his/her response to any questions that he/she may be asked during the guilty plea hearing.

5.     The defendant is not under the influence of alcohol, drugs, or narcotics. He/She is certain that he/she is in full possession of his/her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.     The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He/She has discussed the

3

facts of the case with his/her attorney, and his/her attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has/have been brought against him/her. The defendant's attorney has also explained to the defendant his/her understanding of the United States' evidence.

7.     The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s) beyond a reasonable doubt. The defendant and his/her counsel have discussed possible defenses to the charge(s). The defendant believes that his/her attorney has represented him/her faithfully, skillfully, and diligently, and he/she is completely satisfied with the legal advice of his/her attorney.

8.     A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

9.     This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he/she is pleading guilty because he/she knows that he/she is guilty.

## **PENALTY**

10.     The maximum penalty the Court could impose as to Count One of the Superseding Indictment is:

a.     Minimum Mandatory 10 years to life imprisonment;

b.     A fine not to exceed $4,000,000.00 dollars

4

(sic);

   c. A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he/she could be imprisoned for the entire term of supervised release; and

   d. A mandatory special assessment of $100.00.

**However, based upon the Enhancement Information[] filed by the United States in the case, the defendant is subject to a minimum mandatory twenty years confinement to life imprisonment on Count One, a fine not to exceed $8,000,000.00[,] a term of supervised release of 8 years, which would follow any term of imprisonment and a mandatory special assessment of $100.00. If the defendant violates the conditions of supervised release, he/she could be imprisoned for the entire term of supervised release.**

## SENTENCING

  11. The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his/her attorney and understands that no one can predict with certainty . . . what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he/she will not be allowed to withdraw his/her guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

  12. The United States may provide all relevant

sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.    .    .

## UNITED STATES' OBLIGATIONS

16.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss Count(s) Two through Twelve of the superseding indictment at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

17.     The United States will recommend to the Court that the defendant be sentenced at the low end of the applicable advisory sentencing guideline range as determined by the Court.

## APPLICATION OF U.S.S.G. § 5k1.1 AND/OR FED.R.CRIM.P. 35

18.     If the defendant agrees to cooperate with the United States, he/she agrees to the following terms and conditions:

.      .      .

g.      If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance for this purpose. The defendant also understands that should he/she provide untruthful information to the United States at any time, or should he/she fail to disclose material facts to the United States at any time, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend to the district court judge who sentences the defendant that the defendant receive a sentence at the low end of the applicable advisory guideline range.

.      .      .

**LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE**

19.     The defendant acknowledges that he/she is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

20.     With the limited exceptions noted below, the defendant also waives his/her right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

21.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

a.     Any punishment imposed in excess of the statutory maximum;

b.     Any punishment that constitutes an upward departure from the guideline range; or

c.     A claim of ineffective assistance of counsel.

22.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(*Id.* at 1-5, 7-8 & 10 (emphasis in original)) Appearing before Carter's

signature line on page 12 of the agreement is this paragraph: "I have consulted

with my counsel and fully understand all my rights with respect to the

offenses(s) charged in the Indictment pending against me. **I have read this**

**Plea Agreement and carefully reviewed every part of it with my attorney**.

I understand this agreement, and I voluntarily agree to it. I hereby stipulate that

the Factual Resume,[1] incorporated herein, is true and accurate in every respect,

---

[1]     The Factual Resume, which Carter also signed, reads as follows:

The defendant, **MAURICE MARCELL CARTER**, admits the allegations of Count One of the Superseding Indictment.

### ELEMENTS OF THE OFFENSE

**CARTER** understands that in order to prove a violation of Title 21, United States Code, Section 846, as charged in Count One of the Superseding Indictment, the United States must prove:

> First:     That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and

> Second:     That the defendant knowingly and willfully became a member of such conspiracy.

### OFFENSE CONDUCT

Defendant, **MAURICE MARCELL CARTER**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case.

The defendant, **MAURICE MARCELL CARTER**, is a crack cocaine dealer in the Irvington/Bayou La Batre area of Mobile County. He employed the four co-defendants, JAMES LEE DOUGLAS, HARRY CLINTON CARTER, EUGENE CARTER and DANNY CARLO PROVORSE as runners for him. Each of these individuals has repeatedly delivered crack cocaine to customers for the defendant and received the cash payment for the crack cocaine from the customers and would bring the cash to the defendant. The defendant typically paid the runners with a small amount of crack cocaine for their services.

All the Counts charged in the Superseding Indictment, which represent

and that had the matter proceeded to trial, the United States could have proven the same beyond a reasonable doubt." (*Id.*)

4.      On April 19, 2007, Carter entered a counseled guilty plea to Count One of the Superseding Indictment. (Doc. 174, Guilty Plea Transcript)

> THE COURT:        . . . Mr. Carter, I understand you're pleading guilty to count one of the superseding indictment; is that correct?
>
> THE DEFENDANT:        Yes, ma'am.
>
> THE COURT:      All right. Could you place the defendant under oath, please?
>
> THE CLERK:        Yes, ma'am. Mr. Carter, raise your right hand as best you can.

---

relevant conduct in this case, involved the defendant, either by himself or using a runner, sold crack cocaine to an undercover police officer with the exception of Counts Six and [] Eleven. The facts underlying Count[] Six involved the defendant being caught by law enforcement with crack cocaine in his possession that he intended to sell. The facts underlying Count Eleven involve the defendant providing crack cocaine to co-defendant DANNY CARLO PROVORSE to deliver to a customer for the defendant and PROVORSE being stopped by law enforcement before he could deliver the crack cocaine to the defendant's customer.

The defendant agrees that he possessed with the intent to distribute and distributed in excess of 50 grams of crack cocaine over the course of the conspiracy.

(Doc. 39, at 1-2)

(The defendant was sworn)

THE DEFENDANT:          Yes, ma'am.

THE COURT:          . . . Do you understand that you're now under oath and if you answer any of my questions falsely, those answers may later be used against you in a separate prosecution for perjury or for making a false statement?

THE DEFENDANT:          Yes, ma'am.

THE COURT:          All right. What is your full name?

THE DEFENDANT:          Maurice Marcel Carter.

THE COURT:          And how old are you?

THE DEFENDANT:          27.

THE COURT:          How far did you go in school?

THE DEFENDANT:          I graduated.

THE COURT:          And have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT:          No, ma'am.

THE COURT:          Are you currently under the influence of any drug, medication, or alcoholic beverage?

THE DEFENDANT:          Yes, ma'am. Well, when I left the street I was doing drugs.

THE COURT:          When you were on the street you were doing drugs?

THE DEFENDANT:          Yes, ma'am.

THE COURT:        What kind of drugs were you doing?

THE DEFENDANT:        M a r i j u a n a, c o d e i n e, promethazine syrup, and . . . that's about it. And alcohol, I was drinking alcohol.

THE COURT:        . . . And when was the last time you had any of those substances?

THE DEFENDANT:        . . . I've probably been locked up about two months, I guess.

THE COURT:        Since you've been arrested –

THE DEFENDANT:        Yes, ma'am.

THE COURT:        – you haven't had any? All right. Have you received a copy of the superseding indictment, the written charges pending against you?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And have you fully discussed those charges and the case in general with Ms. Powell?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        Do you understand the charges that are pending against you?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        Are you fully satisfied with the counsel, representation, and advice given to you in this case by Ms. Powell?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        All right. Now, I have been provided with a plea agreement. It's actually an amended plea agreement, is it not?

MS. POWELL:        Yes, ma'am.

THE COURT:        Since the first plea agreement was already filed with the Court, I think it's probably best if you all call this an Amended Plea Agreement and actually put that on the front of it –

MS. POWELL:        Yes, ma'am.

THE COURT:        – so that there won't be any confusion in the record as to which plea agreement is operative.

MS. POWELL:        Yes, ma'am.

THE COURT:        Mr. Carter, I want you to take a look at that and tell me on the record if that is your plea agreement and if that is your signature on both the plea agreement and the factual resume. Now, the factual resume is only on the first one; is that correct?

MR. MAY:   Yes, Your Honor.

MS. POWELL:        This factual resume is correct. There was only one factual resume. There was not an amended factual resume.

THE COURT:        . . . [Y]ou need to take a look at the factual resume which is attached to the first plea agreement and tell me if that is your factual resume.

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And that's your signature on the

13

factual resume?

THE COURT:        Yes, ma'am.

THE COURT:        . . . Did you have the opportunity to read and discuss the amended plea agreement with Ms. Powell before you signed it?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And are there any agreements that you have with the United States Government in your case that are not written down in the amended plea agreement?

(A discussion was held off the record between the defendant and his attorney.)

MS. POWELL:        There's not anything.

THE DEFENDANT:        No, no, ma'am.

THE COURT:        Do you understand the terms of your plea agreement?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        Has anyone made any other or different promises or assurances to you of any kind in an effort to induce you to plead guilty in your case?

THE DEFENDANT:        No, ma'am.

THE COURT:        Do you understand that certain of the terms of the plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that is more severe than you might anticipate? Do you understand that?

14

THE DEFENDANT:        Yes, ma'am.

THE COURT:        Has anyone attempted in any way to force you to plead guilty in this case?

THE DEFENDANT:        No, ma'am.

THE COURT:        Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        . . . [D]o you understand that the offense to which you're pleading guilty is a felony offense and that if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm, and because this is a drug case it could also entail the loss of certain federal benefits? Do you understand those possible consequences of your guilty plea?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        . . . [T]he maximum penalty the Court could impose upon conviction of this offense, based upon the enhancement filed by the United States Attorney, is a minimum mandatory 20 years confinement up to life imprisonment on count one, a fine not to exceed $8 million, a term of supervised release of eight years which would follow any term of imprisonment, and [a] mandatory special assessment of $100. And if you violate[] the conditions of supervised release, you could be imprisoned for that entire term as well. Do you understand the possible consequences of this guilty plea?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        Under the Sentencing Reform Act

15

of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might apply in your case?

(A discussion was held off the record between the defendant and attorney.)

MS. POWELL:        Judge, Mr. Knight had represented Mr. Carter at the probation conference.

THE COURT:        Right.

MS. POWELL:        Do you remember the probation conference that you had?

THE DEFENDANT:        Oh. Yes, ma'am.

THE COURT:        . . . And you and Mr. Knight discussed what the possible guidelines might be in your case? Or what the probation office thought the guidelines might be?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And you know that at that time the enhancement had not been filed?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And so the statutory penalties are different, which means the guidelines would be different as well. You understand that; right?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        . . . And do you understand that the Court will not be able to determine the advisory guidelines sentencing range for your case until after a presentence report

16

has been completed and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office and that the guideline range determined by the Court may be different from any estimate your attorney or the probation office or anybody else may have given you in this case?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        You understand that? All right. Do you also understand that after your guideline range has been determined, the guidelines [themselves] further provide [] for departures either upwards or downwards from that range in certain circumstances?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And do you understand that, although the Court is required to consider the guidelines when determining the sentence, the guidelines are advisory and do not necessarily control the sentence imposed?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose? However, your plea agreement contains a limited waiver of your right to appeal the sentence and in your case you have retained the right to appeal only if punishment is imposed in excess of the statutory maximum, if punishment is imposed that constitutes an upward departure from the guideline range, or if you have a claim of ineffective assistance of counsel. Do you understand that you have waived all but those three appellate rights from the sentence itself contained in your plea agreement?

THE DEFENDANT:        Yes, ma'am.

17

THE COURT:        Do you understand that you have a right to plead not guilty . . . to any offense charged against you and to persist in that plea and that you would then have the right to a trial by jury, that at that trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt, and you would have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And do you understand that if you went to trial and decided not to testify or to put on any evidence, those facts could not be used against you?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        And do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial that I've just described?

THE DEFENDANT:        Yes, ma'am.

THE COURT:        All right. Now, you're pleading guilty to a charge of violating Title 21, United States Code, Section 846. And in order to convict you of that offense, the United States would have to prove that two or more persons in some way or manner came to a mutual understanding to try and accomplish a common and unlawful plan, as charged in the indictment – in this case possession with intent to distribute crack cocaine – and they would also have to prove that you knowingly and willfully became a member of such conspiracy,

knowing the object of that conspiracy.

        THE DEFENDANT:     Yes, ma'am.

        THE COURT:    Do you understand what the government would have to prove in order to convict you?

        THE DEFENDANT:     Yes, ma'am.

        THE COURT:    All right. Now, I asked you earlier if you had signed the factual resume and you said you had, and I want to make sure that you understand that by signing the factual resume you are agreeing that the government could prove the facts set forth in the offense conduct in order to support your conviction. Do you agree to that?

        THE DEFENDANT:     Yes, ma'am.

        THE COURT:    . . . I will ask you now how do you plead to the charge, guilty or not guilty?

        THE DEFENDANT:     Guilty.

        THE COURT:    . . . It is the finding of the Court in the case of United States versus Maurice Marcel Carter that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted and the defendant is now adjudged guilty of that offense.

(*Id.* at 2-12)

    5.    The Presentence Investigation Report was initially prepared by

the Probation Office on June 12, 2007; it was revised on January 10, 2008 and

re-revised on May 15, 2008. (*See* Doc. 141, at 1) Based upon the statutory

offense level of 34 and all other factors contained in the report, including a

criminal history category of III, United States Probation Officer Kevin M.

Nelson recommended that Carter receive a 240-month term of imprisonment,

a 10-year term of supervised release following his release from prison, and a

special assessment of $100.00. (Doc. 141, Revised Sentencing

Recommendation, at 1-3) The defendant interposed the following objections

to the Presentence Report:

### PART A.  THE OFFENSE

Chapter Three Adjustments

**39.    Adjustment for Role in the Offense:**    The Defendant
objects to the four-level enhancement for being an organizer or
leader of criminal activity that involved five or more
participants.

Chapter Four Enhancements

**43.    Adjustment for Acceptance of Responsibility:**  The
Defendant has accepted responsibility for his criminal conduct.
Although the Defendant was arrested while on pretrial
supervision, the Domestic Violence 3rd Degree and Unlawful
Imprisonment cases were dismissed by the Mobile County
District Court Judge on June 20, 2007. The Defendant is entitled
to a reduction of two levels. Further, the Defendant assisted
authorities in the prosecution of the offense by timely notifying
authorities of his intent to enter a guilty plea. The Defendant
qualifies for an additional one-level decrease. Therefore, the
Defendant is entitled to a reduction of three levels pursuant to

U.S.S.G. Section 3E1.1(a).

**PART D.  SENTENCING OPTIONS**

Custody

**86.    Guideline Provisions:**    Based on a total offense level
of 29 and a criminal history category of III, the guideline range
of imprisonment is 108 to 135 months.

(Doc. 161, 1-2) On May 19, 2008, the Government moved for downward

departure pursuant to U.S.S.G. Section 5K1.1. (Doc. 162) "[T]he United States

recommends a downward departure to reduce the defendant['s] sentence to 120

[] months." (*Id*.)

6.    During the sentencing hearing on May 20, 2008, the parties

agreed that the appropriate offense level was 31[2] and that Carter had a criminal

history category of III. (*See* Doc. 175, Sentencing Transcript) Thereafter, the

following occurred:

THE COURT:  . . . Well, as I've said, the statutory
minimum with the enhancement moots out the guideline level,
because the guideline level would be substantially below that.
But the sentencing guideline range is the statutory minimum of
240 months. Now let me hear from you on your substantial
assistance motion.

MR. MAY:   . . . The United States would recommend a
downward departure of 50 percent from the 20 years or 240

---

[2]    Carter was given credit for acceptance of responsibility and the defendant
withdrew his objection to being a leader or organizer. (Doc. 175, Sentencing Transcript, at 2-4)

mandatory minimum to 120 months. And the basis for our motion is this defendant's cooperation where he cooperated against all of the codefendants in his case, many of whom were actually relatives of his. So it created quite a bit of angst in the family and, I think, an uncomfortable position for him. I believe several of those individuals were related to him in some manner[.] . . . [H]e also provided information about other individuals in the Fowl River area that weren't indicted in this case but were part of the same investigation. There was a Cleveland Green, a Ruben Green, and a Ricky Bowie, who were all part of the overall investigation in the Fowl River area of south Mobile County, provided helpful information against those individuals, stood ready to testify. They all pled. Actually, Mr. Bowie pled very late and he was listed as a witness for the government at that hearing. And then even after he pled, he was going to dispute the drug quantity at sentencing. We brought Mr. Carter down from Perry County to testify at the sentencing and ultimately Ricky Bowie decided . . . not to contest the drug amount at his sentencing. . . . And so we believe he has substantially assisted and helped the government. [] [H]e was actually planning . . . to work and do something proactive against his supplier, who was out of the district . . . [but] his conditions were revoked. But I just mention that to show he was willing to do that, to work up the chain. And so we believe he's earned cooperation.


       THE COURT:      Do you have anything to add to that, Ms. Powell?

       MS. POWELL:      Only, Judge, that there are some ongoing investigations that he's still willing to cooperate in. In fact, he's willing to be debriefed again today on some individuals – one individual in particular that's been indicted in this district, that he had previously been debriefed about. . . . And that along with a couple of other cases – one out of Mississippi that he has some information on, and there's an FBI agent who he's been in contact with there . . . . So there's still

some things in the works that he's still willing to cooperate with.

.     .     .

THE COURT:     . . . Mr. Carter, do you have anything that you would like to say?

THE DEFENDANT:    I just want to tell the government I'm sorry, to my parents, my mother, and the kids that I adopted, you know what I'm saying . . . .

.     .     .

THE COURT:     . . . Well, Mr. Carter, I've considered the sentencing guidelines and I've considered the statutory purposes of sentencing in your case. I find that the motion for downward departure is due to be granted and I do grant it. And I intend to follow the recommendation of the United States Attorney in this matter. I find that that provides for a reasonable sentence, given those statutory purposes of sentencing, and it takes into account your substantial assistance in the investigation and prosecution of others.

I'm now going to state the sentence I intend to impose, and after I've stated it I will allow counsel to make legal objections before imposition of the sentence.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Maurice Marcel Carter, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 120 months. The Court recommends that he be imprisoned at an institution where a residential comprehensive substance abuse treatment program is available.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 10 years as to count one.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released. While on supervised release the defendant shall not commit any federal, state, or local crimes, he shall be prohibited from possessing a firearm or other dangerous device and shall not possess a controlled substance.

In addition, the defendant shall comply with the standard conditions of supervised release as recommended by the United States Sentencing Commission and on record with this Court. The Court also orders that the defendant also comply with the following special condition of supervised release: He shall participate in a program of testing and treatment for drug and/or alcohol abuse as directed by the probation office.

The Court finds that the defendant does not have the ability to pay a fine and therefore a fine is not imposed.

. . . I find the advisory guideline range with the motion for downward departure and the recommended sentence of the United States Attorney as appropriate to the facts and circumstances of this case and provides for a reasonable sentence, given the statutory purposes of sentencing.

The sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation while taking into account the substantial assistance in the prosecution and investigation of others.

It is ordered that the defendant pay a special assessment in the amount of $100 on count one, which shall be due immediately.

Now, having stated the sentence I intend to impose, are there any objections to it?

MR. MAY:   Not from the United States, Your Honor.

MS. POWELL:     Not from the defendant, Your Honor.

THE COURT:     . . . I hereby impose the sentence as previously stated.

Mr. Carter, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary of if there is some fundamental defect in the proceeding that was not waived by your guilty plea.

You also have a statutory right to appeal the sentence itself in certain circumstances. However, you entered into a plea agreement which waives certain of your rights to appeal the sentence itself. Such waivers are generally enforceable. But if you believe the waiver to be unenforceable, you can test that theory in the appellate court. If you decide to appeal, you must do so within 10 days of entry of judgment in this case and Ms. Powell can file that notice for you.

(*Id.* at 4-11; *see also* Doc. 163 (judgment in a criminal case entered on June 5, 2008))

7.     On July 1, 2008, Carter filed the present collateral attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 168) Therein, petitioner raises the following grounds which he claims entitle him to relief: (1) the calculation of his guideline range (i.e., paragraphs 48 and 49) was incorrect and he was given more points and placed in a higher mandatory-minimum range;[3] and (2) ineffective assistance of counsel due to trial

---

[3]     Petitioner makes the following argument: "Paragraph[s] 48 & 49 should have been treated as related cases because they were consolidated for sentencing. Th[ey] should have

been treated as a single conviction. If these prior drug offenses would have been treated as such defendant would have received only a total of 2 points for 48 and 49 and if treated as one conviction defendant would be enhanced to 10 yrs to life and not 20 yrs to life. Defendant would have had a criminal history category II instead of category III." (Doc. 1, at 3)

The Presentence Investigation Report reads, in relevant part, as follows:

**PART B.        THE DEFENDANT'S CRIMINAL HISTORY**

.        .        .

| | Date of Arrest | Conviction/ Court | Date Sentence Imposed/Disposition | Guidel ine/ Points |
|---|---|---|---|---|
| 48. | 5/10/2001 (age 21) | Possession of Cocaine, Mobile County Circuit Court, #CC 01-2984 | 1/3/02: Defendant sentenced to 6 months confinement of a 10-sentence (split), 1 month and 3 days credited, 5 years probation, and court costs. 8/7/02: Delinquency report issued by Probation Officer John Brantley. Probation revocation filed. 9/13/02: Defendant sentenced to 6 months confinement of a 10-year | 4A1.1(b) |
| | | | sentence, run concurrent with CC02-614, given credit for 1 month and 12 days.  10/25/02: Probation reinstated and defendant released. 5/30/03: Court costs paid in full. 5/18/04: Defendant's probation terminated early because court costs of $300 paid. | 2 |

The defendant was represented by attorney Tommy Patterson. The defendant was arrested by the Mobile County Sheriff's Office on January 10, 2001, and found to be in possession of crack cocaine at 6232 Spanish Trail Drive, Mobile, Alabama.

| 49. | 12/1/2001 (age 21) | Possession of Cocaine, Mobile County Circuit Court, Mobile, AL, #CC 02-614 | 4/5/02: Defendant sentenced to 6 months confinement of a 10-year sentence and 5 years probation. 9/13/02: Probation revoked due to delinquency report filed on August 9, 2002. 10/25/02: Defendant's sentence amended to time served, given credit for 1 month, and 12 days. Defendant's 6-month sentence to run concurrent with CC01-2984. Defendant placed back on probation. Defendant ordered to pay $300 court costs by January 31, 2006. 5/18/04: Defendant's probation was terminated early because court costs of $300 paid. | 4A1.1(b)

2 |

The defendant was represented by attorney Tommy Patterson. On November 9, 2001, the defendant was found to be in possession

of a controlled substance (cocaine) and $1,141 in U.S. currency while at the Southern Living Motel, Highway 90 West, Mobile, Alabama. The defendant ran into the woods when police tried to arrest him. The defendant was ordered to forfeit $1,141.

(Doc. 141, at 15-17)

counsel's failure to raise the foregoing argument during his sentencing proceeding. (Doc. 1, at 3, 4 & 5)

8.    The United States filed a motion to dismiss on September 5, 2008. (Doc. 177) Therein, the government argues that each ground asserted by Carter is foreclosed by his knowing and voluntary sentence appeal waiver. (*Id.* at 3-6) Carter's response time to the government's motion was extended to October 23, 2008. (Doc. 185) To date, this Court has not received a response from the petitioner.

## CONCLUSIONS OF LAW

1.    28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.    In this circuit, "[a]n appeal waiver is valid if a defendant enters

into it knowingly and voluntarily." *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (citation omitted); *see also United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993) ("We hold, therefore, that in most circumstances a defendant's knowing and voluntary waiver of the right to appeal his sentence will be enforced by this circuit."), *cert. denied,* 513 U.S. 1051, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994).  In this case, Carter pleaded guilty during a change of plea proceeding after being informed of the limited appeal waiver and acknowledging his understanding of that limited waiver. Specifically, Carter informed the Court that he understood, as set forth in the plea agreement bearing his signature, that he had waived all rights to appeal his sentence except that he could appeal if the punishment imposed was in excess of the statutory maximum, if the punishment imposed constituted an upward departure from the guideline range, or if he had a claim of ineffective assistance of counsel. (Doc. 174, at 9-10) Based upon the foregoing, the undersigned holds that Carter's knowing and voluntary limited waiver of his right to appeal his sentence in this case should be enforced. Because it is clear that Carter's punishment was not in excess of the statutory maximum nor was his sentence an upward departure from the guideline range, his frivolous contention that he was improperly placed in a higher guideline range for

sentencing purposes based on his prior criminal history[4] cannot be challenged in this collateral petition. *Cf. Bushert, supra,* 997 F.2d at 1350 n.17 (indicating that even broad waivers, which include a waiver of collateral appeal of the sentence, can be judicially enforced so long as they are knowing and voluntary).

3.    Carter additionally contends that constitutionally ineffective assistance of trial counsel entitles him to the relief afforded by 28 U.S.C. §

---

[4]    Carter's argument regarding the calculation of his guideline range is frivolous for numerous reasons. First, as explained by this Court during his sentencing, "the statutory minimum with the enhancement moots out the guideline level." (Doc. 175, at 4) In other words, because the minimum mandatory with enhancement in Carter's case was twenty (20) years (*see* Doc. 40, at 3), the guideline ranges had no impact on sentencing. Therefore, any argument by Carter or his attorney that his guideline range was miscalculated would have had no impact on his sentence. The only factor which could and did have an impact on Carter's sentence was the government's motion for downward departure. The government's motion in this regard is the only reason petitioner's sentence went down to ten (10) years, as opposed to him being sentenced to the mandatory minimum of twenty (20) years.

The undersigned would, as well, additionally note that even if the guideline levels remained in play, Carter's argument would still be frivolous. Petitioner's basic contention is that two prior drug convictions, set forth in paragraphs 48 and 49 of the Presentence Investigation Report, should have been treated (and counted for point purposes) as a single conviction since they were consolidated for sentencing "and if treated as one conviction defendant would be enhanced to 10 yrs to life and not 20 yrs to life." (Doc. 1, at 3) Carter cites to absolutely no authority which supports his contention in this regard. Moreover, as reflected in the report, these drug offenses were separate, occurring on different days in 2001 at different locations. Petitioner plead guilty to both charges and simply because he was sentenced, during probation revocation proceedings in 2002, to concurrent terms establishes nothing other than that petitioner was fortunate to get concurrent sentences following revocation proceedings. Therefore, Carter's criminal history points were not improperly calculated and any attempt by petitioner or his attorney to raise such a claim during sentencing would have been properly rejected.

2255[5] because counsel failed to raise the foregoing miscalculation argument

during his sentencing proceeding.[6] In *Williams v. United States*, 396 F.3d

---

[5]    Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised.  *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

[6]    In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S.668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996).

When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oates v. Moore*, 527 U.S. 1008, 119

1340, 1342 (2005), *cert. denied*, 546 U.S. 902, 126 S.Ct. 246, 163 L.Ed.2d 226 (2005), the Eleventh Circuit recognized that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." In other words, a petitioner is not allowed "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance[.]" *Id.* Because this is exactly what Carter is attempting to do in this case, his claim of ineffective assistance of counsel fails under *Williams*.

      4.     In consideration of the foregoing, the Magistrate Judge

---

S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

     As previously explained, *see* fn. 4, *supra,* Carter's attorney did not render ineffective assistance by failing to raise the frivolous guideline miscalculation argument set forth in petitioner's § 2255 petition. First, the guideline ranges were rendered moot in this case as the Court explained. Moreover, even if those ranges were not rendered moot, petitioner has not established that defense counsel had a solid legal basis upon which to argue that his two prior drug convictions from 2002 should have been viewed as one conviction simply because he became the recipient of concurrent sentences during probation revocation proceedings. Accordingly, petitioner's attorney was not constitutionally deficient during the sentencing proceeding in this Court.

recommends that the Court deny[7] Carter's motion to vacate, set aside or correct

his sentence under 28 U.S.C. § 2255.

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not

violated in this cause and that his request to vacate, set aside or correct his

sentence should be **DENIED**.

The instructions which follow the undersigned's signature contain

important information regarding objections to the report and recommendation

of the Magistrate Judge.

**DONE** this the 31st day of October, 2008.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[7]      The undersigned has effectively addressed the merits of petitioner's claims, by footnote, only because this Court, during the plea colloquy, did not specifically discuss with Carter that his limited waiver of his right to appeal included, as set forth in the amended plea agreement, a waiver of his right to challenge the sentence imposed, or the manner in which it was determined, in a collateral attack like the present one. (*Compare* Doc. 40, at 10 *with* Doc. 174, at  9)

33

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY                     
**UNITED STATES MAGISTRATE JUDGE**